# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF
# ILLINOIS WESTERN DIVISION

| | |
|---|---|
| AVRAHOM ORLOFF, MOSHE SILBER, Buckingham and Crestview TIC I LLC, Buckingham and Crestview TIC II LLC, and Buckingham and Crestview TIC III LLC, <br><br> Plaintiffs, <br><br> v. <br><br> USHA KAMARIA, RAJIV KAMARIA, BUCKINGHAM SQUARE LLC, and CRESTVIEW MANOR APARTMENTS LLC, <br><br> Defendants. | 3:23-cv-50097 <br><br> JURY TRIAL DEMANDED |

## THIRD AMENDED COMPLAINT

Plaintiffs, Avrahom Orloff and Moshe Silber, Buckingham and Crestview TIC I LLC, Buckingham and Crestview TIC II LLC, and Buckingham and Crestview TIC III LLC (collectively "Plaintiffs"), by and through their attorneys at Nathan & Kamionski LLP, bring this action against Defendants, Usha Kamaria, Rajiv Kamaria, Buckingham Square LLC, and Crestview Manor Apartments LLC ("Corporate Defendants"). In support of Plaintiff's allegations, they plead as follows:

## INTRODUCTION

1. This is an action seeking damages for breach of contract, fraud, two counts of fraudulent inducement, fraudulent concealment, and intentional interference with a contractual relationship arising out of Plaintiffs' purchase of certain commercial residential real estate properties located in Rockford, Illinois.

2. Defendants, sellers of the property at issue and/or agents of the sellers, made representations to Plaintiffs regarding the value and condition of the properties and the real estate

taxes for the properties. Defendants then breached the contract as well as interfered with Plaintiffs contractual relationships with tenants by collecting rents, that were in no way due to Defendants, and coercing tenants to prematurely break their lease agreements and thus impacting the rent collected from the properties each month.

3. Defendants' wrongful actions caused Plaintiffs to suffer damages including, at least equal to the value of the decrease in the property caused by Defendants actions, loss revenue from wrongfully collected rent from tenants despite no lawful justification, and otherwise unnecessary and unjust expenditure of fees and costs associated with investigating, uncovering, and correcting Defendants' fraudulent and breaching behavior.

## THE PARTIES

4. Plaintiffs, Avrahom Orloff and Moshe Silber, are individual real estate investors who reside in the state of California.

5. The Corporate Plaintiffs, Buckingham and Crestview TIC I LLC, Buckingham and Crestview TIC II LLC, and Buckingham and Crestview TIC III LLC, are Delaware LLCs registered to do business in the state of Illinois.

6. Plaintiff Buckingham and Crestview TIC I LLC has just one member, Plaintiff Silber, who is a citizen of California. Therefore, Plaintiff Buckingham and Crestview TIC I LLC is a citizen of California.

7. Plaintiff Buckingham and Crestview TIC II LLC has just one member, 707 W. 48th St., LLC, a California limited liability company that has its principal place of business and headquarters in California. In turn, 707 W. 38th St., LLC has two members, Plaintiff Orloff and his wife Aliza Orloff, both of whom are citizens of New Jersey. Therefore, Plaintiff Buckingham and Crestview TIC II LLC is a citizen of California and New Jersey.

8. Plaintiff Buckingham and Crestview TIC III LLC also has just one member, Value Add Holdings LLC, a California limited liability company that has its principal place of business and headquarters in California. In turn, Value Add Holdings LLC also has two members, Plaintiff Orloff and his wife Aliza Orloff, both of whom are citizens of New Jersey. Therefore, Plaintiff Buckingham and Crestview TIC III LLC is a citizen of California and New Jersey.

9. Upon information and belief at the time this Amended Complaint was filed, including her position as management and as the registered agent of Corporate Defendants in Illinois; owning residential property in Illinois; and advocacy for local businesses in Skokie, Illinois, Defendant, Usha Kamaria ("Usha"), an individual, is domiciled in the State of Illinois and intends to remain. Defendant Usha is a principal employee, manager, and agent of both Buckingham Square LLC and Crestview Manor Apartments LLC and as such is authorized to make binding statements and enter into contractual obligations on behalf of Buckingham Square LLC, and Crestview Manor Apartments LLC. Based on the aforesaid information and belief, Defendant Usha is therefore a citizen of the state of Illinois.

10. At all times herein, Defendant Usha was acting in her official capacity as principal employee, manager, and/or agent of the Corporate Defendants and was authorized to make statements and enter into binding agreements on behalf of Corporate Defendants.

11. Upon information and belief at the time this Amended Complaint was filed, including his position as manager of Corporate Defendants, and the registered agent of a non-profit corporation in Illinois, Defendant Rajiv Kamaria ("Rajiv"), an individual, is domiciled in the State of Illinois and intends to remain. Defendant Rajiv and is an employee and/or agent of both Corporate Defendants and as such is authorized to make binding statements and enter into

3

contractual obligations on behalf of Corporate Defendants. Based on the aforesaid information and belief, Defendant Rajiv is therefore a citizen of the state of Illinois.

12. At all times herein, Defendant Rajiv was acting in his official capacity as principal employee, manager, and/or agent of the Corporate Defendants and was authorized to make statements and enter into binding agreements on behalf of Corporate Defendants.

13. Based on information and belief at the time this Amended Complaint was filed, Defendants Buckingham Square LLC, and Crestview Manor Apartments LLC, the Corporate Defendants, are both limited liability companies organized, based, and doing business in the State of Illinois. Based on the aforesaid information and belief, The three members of the Corporate Defendants' LLCs are Usha Kamaria and her husband Omprakash Kamaria as well as Rajiv Kamaria, and thus the citizenship of the Corporate Defendants is the state of Illinois.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction under 28 U.S.C. §1332 because the parties are completely diverse and the matter in controversy exceeds $75,000.

15. This Court has personal jurisdiction over Defendant Usha Kamaria because she is a resident of the State of Illinois, has owned real property in Illinois, and has contracted for the sale of real property in Illinois.

16. This Court has personal jurisdiction over Defendant Rajiv Kamaria because he is a resident of the State of Illinois, and has owned real property in Illinois.

17. This Court has personal jurisdiction over Buckingham Square LLC and Crestview Manor Apartments LLC because each is organized as an LLC in Illinois, owned real property in Illinois, and engaged in contractional sale of real property in Illinois.

18. This court also has *in rem* jurisdiction as the parties dispute revolves around the

4

parties contract for the sale of real property located in Rockford, Illinois. The properties at issue in this case (hereinafter referred to as the "Properties") are as follows:

(1) 4116 Florida Dr., Rockford, IL;
(2) 4208 Florida Dr., Rockford, IL;
(3) 4115 Florida Dr. Rockford, IL;
(4) 4205 Florida Dr., Rockford, IL;
(5) 4309 Florida Dr., Rockford, IL;
(6) 2305 S. Alpine Rd., Rockford, IL;
(7) 2315 Eastmoreland Ave., Rockford, IL;
(8) 2404 Eastmoreland Ave., Rockford, IL.

19. Venue is proper in this District under 31 U.S.C. §3732(a) and 28 U.S.C. §1391(b), because Defendants transact business in this District, and the parties dispute revolves around the parties contract for the sale of real property located in this District.

## **FACTS**

20. On or about January 18, 2022, the parties entered into a Real Estate Sale Contract for the sale of the Properties from the Corporate Defendants and Defendant Usha to Plaintiffs (hereinafter the "Contract," attached as Exhibit A).

21. Both Plaintiffs signed the Contract as the Buyers on January 30, 2022.

22. Defendant Usha Kamaria, as agent for both Corporate Defendants, also signed the contract January 30, 2022 on behalf of all Sellers.

23. On January 31, 2022, Plaintiffs performed under the contract by submitting $200,000 to Chicago Title Insurance Company as escrow deposit for the purchase of the Properties.

24. Under §3 of the Contract, Defendants, as Sellers, were obligated to provide Plaintiffs with "true and correct in all material respects" copies of the requested documents and information and any other documents or information "reasonably required to carry out the terms

and intent of" the Contract.

25. Moreover, under §9 of the Contract, Defendants agreed and were obligated to provide Plaintiffs with "true and correct" copies of:

> I. All rental agreements, tax bills, "and other written agreements or notices which affect the Property;"
>
> II. An Operating Statement for the Properties for the "12 calendar months immediately preceding [January 18, 2022]: and
>
> III. A complete and current rent roll, including a schedule of all tenant deposits and fees.

26. Defendants further warranted under §9(c) of the Contract that "[t]he rent roll for the Properties…shall be true and correct in all respects"

27. Defendants never performed their duties and obligations under the Contract, and instead provided wrong, inaccurate, and intentionally misleading documents and information to Plaintiffs.

28. While still negotiating the contract, on January 12, 2022, Defendants, via their agent Farris Gosea, stated in an email to Plaintiffs that "all roofs are less than 4 years old." Defendants caused this information to be communicated to Plaintiffs in hopes of Plaintiffs reliance on this information for an increase in the purchase price.

29. On January 18, 2022, as the Parties were still negotiating the terms of the contract, Defendants, via their real estate agent, cause Plaintiffs to be provided with an Offering Memorandum (the "OM"). The OM was supposed to provide true and accurate financial information about the Properties, information which Defendants knew would be relied on by Sellers in deciding to purchase the Properties.

30. However, to Plaintiffs detriment, the OM intentionally misstated real estate taxes which caused Plaintiffs to incur an increased tax burden, which was otherwise not disclosed to them.

31. On January 15, 2022, Defendants via their real estate agent, also provided via email an Income Expense Report ("IER") to Plaintiffs. This IER, as required by the Contract, propounded to provide property tax information. However, this IER provided wrong, inaccurate, and intentionally misleading information for property taxes in previous years associated with the Properties.

32. Defendants thus caused Plaintiffs to incur a significant increase in the tax burden for the Properties.

33. Despite possessing correct information, Defendants never corrected any of the wrong, inaccurate, and intentionally misleading information which they provided Plaintiffs.

34. Defendants sought to reassure Plaintiffs of the accuracy of these figures when again Defendants provided wrong, inaccurate, and intentionally misleading information on January 19, 2022. On this date, Defendants' real estate broker, acting within their official capacity as agent for Defendants, sent an email to Plaintiffs purporting to provide "updated" income statements.

35. Yet this "updated" income statement still contained property tax figures which were exactly the same as the incorrect information provided in the initial OM and IER.

36. The parties also executed the First Amendment to Real Estate Sale Contract, made February 16, 2022 and fully executed by both Plaintiffs and Defendant Usha on behalf of the Corporate Defendants (hereinafter the "First Amendment").

37. Defendants not only produced wrongful, inaccurate, and intentionally misleading

information to Plaintiffs in the OM and IER, but also violated the terms and conditions of the First Amendment to the Real Estate Sale Contract.

38. Section 5 of the First Amendment requires Defendants to provide "all rental agreements, leases, [and] service contracts…" and "[a] complete and current rent roll, including a schedule of all tenant deposits and fees."

39. On February 21, 2022, Defendant Rajiv, as agent for the Corporate Defendants, via email provided wrong, inaccurate, and intentionally misleading information about tenants, their leases, their rents, deposits, and fees associated with those leases.

40. One example of the wrong, inaccurate, and intentionally misleading information provided by Defendant Rajiv to Plaintiffs was that Defendant Rajiv did not inform Plaintiffs that approx. 4-6 tenants paid rents for several months in advance, the payments were made to Defendants, but those payments were never disclosed to Plaintiffs and Defendants retained the funds knowing they did not have any legal claim to the funds.

41. Another example of the fraudulent information provided by Defendants to Plaintiffs is that one unit of the Properties is occupied, rent free and without a lease in place, by a housekeeper for the Properties who is a friend of Defendants.

42. Section 8 of the First Amendment states in relevant part, "Seller shall not enter into any…lease modification."

43. On information and belief, Defendant Rajiv, on or about March 1, 2022, issued approx. 15- 20 "Notice to Vacate" letters to the tenants of the Properties.

44. On information and belief, Defendant Rajiv's interference with the lease agreements caused Plaintiffs to suffer actual loss of rental income.

45. Further evidence of Defendants fraudulent statements, Despite Defendants'

claims that all the roofs were "less than 4 years old" it was discovered that at least two of the properties, 2315 Eastmoreland and 2404 Eastmoreland, had roofs significantly older than 4 years, were damaged to the point of significant leaking and lack of structural integrity, and required immediate repair and/or replacement.

46. When Plaintiffs contacted their insurance company for these properties, Plaintiffs were informed that despite no longer being the owners of the properties, and having no claim to any payment, Defendants caused a false insurance claim to be filed in an attempt to collect an insurance payment for the damaged roofs, knowing they had no legal justification to receive such payment.

47. Defendants' misrepresentations regarding the age of the roofs caused Plaintiffs to suffer damages in an amount equal to the increase in the purchase price based on the representation, damages in an amount equal to cost of repairs, and damages incurred as a result of a false insurance claim being filed under their policy.

48. As part of operation of the Properties, its rental and leasing management conducted business, including email communication, with the following Google account: buckinghamsquareapts@gmail.com ("Buckingham Google Account").

49. In connection with the purchase of the Properties, the Parties executed a Bill of Sale on April 13, 2023.

50. The sale included the following items:

> All property, tangible and intangible, identified in the Real Estate Sale Contract, ("Contract") dated January 18, 2022 as amended, including all of fixtures, fixtures and equipment, all interest in any leases, rents and security deposits affecting the subject Properties, license and occupancy agreements, all assignable service contracts and all other property and all other property used in connection with the rental and leasing of the Properties pertaining thereto.

51. As "property used in connection with the rental and leasing of the Properties," the Buckingham Google Account was sold to Plaintiffs on April 13, 2023 and was no longer the property of any Defendants.

52. Additionally, "all interest in any leases, rents, and security deposits affecting the Subject Properties" were sold to Plaintiffs on April 13, 2023.

53. Nonetheless, between April 13, 2023 and the present, Defendant Rajiv Kamaria improperly and unlawfully hacked into the Buckingham Google Account and accessed all of Plaintiffs' proprietary emails related to Plaintiffs' business.

54. Defendant Rajiv Kamaria even sent an email to his personal account from the Buckingham Google Account and then deleted the email from the Buckingham Google Account in attempt to cover-up his wrongdoing.

55. At all relevant times, Defendant Rajiv Kamaria was acting on behalf of and in cooperation with Defendants Usha Kamaria, Buckingham Square LLC, and Crestview Manor Apartments LLC.

## COUNT I – BREACH OF CONTRACT

56. Plaintiffs restate and incorporate by reference each allegation above and below as if fully set forth here.

57. The Real Estate Contract for the sale of the Properties, executed January 18, 2022 was a valid, binding and fully enforceable contract.

58. On January 21, 2022, Plaintiffs performed under the Contract by depositing $200,000 with an escrow agent, as required by Section 2 of the Terms and Conditions of the contract, and Section 2 of the First Amendment to Real Estate Sale Contract. Plaintiffs provided the remainder of the contracted for sales-price in accordance with the terms and conditions of the

Contract and proceed to close the transaction as Defendants transferred ownership in the Properties.

59. Despite Plaintiff's performance under the Contract, Defendants breached the Terms and Conditions of the Contract and First Amendment in the following ways:

   I. Failed to provide true and correct copies of the latest rental agreements, leases, and tax bills;

   II. Failed to prove true and accurate Operating Statements for the properties for the 12 calendar months preceding the effective date of the contract (January 18, 2022);

   III. Failed to provide a true and accurate current rent roll;

   IV. Failed to provide a true and accurate schedule of all tenant deposits and fees; and

   V. Failed to update and/or correct the wrong, inaccurate, and intentionally misleading information provided at the time of Closing.

60. Defendants failure to perform under the contract constitutes a material breach of the Terms and Conditions and caused Plaintiffs to suffer damages in excess of $75,000.

## COUNT II – FRAUD

61. Plaintiffs reassert and incorporate by reference each allegation above and below as if fully set forth here.

62. In addition to the allegations stated above, Plaintiffs bring this count of fraud against Defendants.

63. Defendants purposefully and intentionally provided false, misleading, incorrect,

and inaccurate information about the Properties, the property taxes, leases, and rents in documentation issued to Plaintiffs.

64. As specifically stated above, Defendant Usha and Defendant Rajiv, through their real estate agent, knowingly provided false and misleading information to Plaintiffs.

65. On January 18, 2022, Defendants, via their real estate agent, provided via email the OM to Plaintiffs which understated the previous years' property taxes by approx. $25,000.

66. On January 15, 2022, Defendants, via their real estate agent, provided, via email, the IER to Plaintiffs which again understated the previous years' property taxes by approx. $25,000.

67. On January 19, 2022, Defendants, via their real estate agent, via email provided an "Updated" OM and IER to Plaintiffs, which again understated the previous years' property taxes by approx. $25,000.

68. On February 21, 2022, Defendant Rajiv provided, via email, a "Rent Roll" which did not include that Defendants had collected rents that were paid in advance by tenants; did not include that one unit was occupied without a lease and for free by an employee and/or friend of Defendants; and did not include any information regarding the 15-20 tenants for which Defendants unjustly and without notice to Plaintiffs, issued notices to vacate.

69. As a result of the foregoing fraudulent conduct, Plaintiffs suffered damages in excess of $25,000.

## COUNT III – FRAUDULENT INDUCEMENT

70. Plaintiffs reassert and incorporate by reference each allegation above and below as if fully set forth here.

71. In addition to Counts I and V, and in the alternative to Count II, Plaintiffs bring

this count of fraudulent inducement against Defendants.

72. On January 18, 2022, Defendants, via their real estate agent, provided via email the OM to Plaintiffs which understated the previous years' property taxes by approx. $25,000.

73. On January 15, 2022, Defendants, via their real estate agent, provided, via email, the IER to Plaintiffs which again understated the previous years' property taxes by approx. $25,000.

74. On January 19, 2022, Defendants, via their real estate agent, via email provided an "Updated" OM and IER to Plaintiffs, which again understated the previous years' property taxes by approx. $25,000.

75. On February 21, 2022, Defendant Rajiv provided, via email, a "Rent Roll" which did not include that Defendants had collected rents that were paid in advance by tenants; did not include that one unit was occupied without a lease and for free by an employee and/or friend of Defendants; and did not include any information regarding the 15-20 tenants for which Defendants unjustly and without notice to Plaintiffs, issued notices to vacate.

76. Defendants Usha and Rajiv made these fraudulent representations to Plaintiffs with knowledge, information, and belief that these statements would be relied upon by Plaintiffs in deciding to purchase the Properties.

77. Plaintiffs did rely on the statements contained in the OM, IER, Rent Roll, and other correspondence from Defendants in deciding to purchase the Properties.

78. Defendants were aware of the fraudulent and wrong financial information they provided and purported to issue "updated" financial information, but the "updated" information was in fact the same wrong, inaccurate, and intentionally misleading information as previously provided.

79. As a result of Defendants fraudulent warranties and representations, Plaintiffs decided to purchase the Properties.

80. As a result of Defendants fraudulent warranties and representations, Plaintiffs suffered injuries and damages in excess of $25,000.

## COUNT IV - FRAUDULENT CONCEALMENT

81. Plaintiffs reassert and incorporate by reference each allegation above and below as if fully set forth here.

82. In addition to Counts I and V, and in the alternative to Counts II and III, Plaintiffs bring this count of fraudulent concealment against Defendants.

83. On January 18, 2022, Defendants, via their real estate agent, provided via email the OM to Plaintiffs which understated the previous years' property taxes by approx. $25,000.

84. On January 15, 2022, Defendants, via their real estate agent, provided, via email, the IER to Plaintiffs which again understated the previous years' property taxes by approx. $25,000.

85. On January 19, 2022, Defendants, via their real estate agent, via email provided an "Updated" OM and IER to Plaintiffs, which again understated the previous years' property taxes by approx. $25,000.

86. On February 21, 2022, Defendant Rajiv provided, via email, a "Rent Roll" which did not include that Defendants had collected rents that were paid in advance by tenants; did not include that one unit was occupied without a lease and for free by an employee and/or friend of Defendants; and did not include any information regarding the 15-20 tenants for which Defendants unjustly and without notice to Plaintiffs, issued notices to vacate.

87. Defendant Kamaria made these fraudulent representations to Plaintiffs with

knowledge, information, and belief that these statements would be relied upon by Plaintiffs in deciding to purchase the Properties.

88. Plaintiffs did rely on the statements contained in the OM, IER, Rent Roll, and other correspondence from Defendants in deciding to purchase the Properties.

89. Pursuant to the duties and obligations detailed in the Contract, Defendants were under a continuing duty to provide accurate and reliable information, and to continue to supplement information known to be inaccurate.

90. Defendants were aware of the fraudulent and wrong financial information they provided and purported to issue "updated" financial information, but the "updated" information was in fact the same wrong, inaccurate, and intentionally misleading information as previously provided.

91. As a result of Defendants fraudulent warranties and representations, Plaintiffs decided to purchase the Properties.

92. As a result of Defendants fraudulent warranties and representations, Plaintiffs suffered injuries and damages in excess of $25,000.

**COUNT V – INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP**

93. Plaintiffs reassert and incorporate by reference each allegation above and below as if fully set forth here.

94. In addition to the previous counts, Plaintiffs bring this count for intentional interference with a contractual relationship against Defendants.

95. Plaintiffs and Defendants entered into a valid, binding, and enforceable contract whereby Defendants transferred to Plaintiffs any and all "interest in and to any leases, rents and security deposits affecting the properties, [and] license and occupancy agreements…."

96. Once Plaintiffs and Defendants executed the documents and closed on the sale of the Properties, Sellers became the sole and exclusive counter-party to the leases, license and occupancy agreements for tenants who reside in the Properties.

97. Defendants knew Plaintiffs were assuming the contractual relationships with the tenants who reside in the Properties, and sought to interfere with Plaintiffs rights under those tenant agreements.

98. Specifically, Defendants intentionally unlawfully and without justification coerced tenants to pay monthly-rent that had not yet come due, early and to Defendants and deprived Plaintiffs of rents which they were entitled to by law.

99. Additionally, Defendants intentionally coerced, persuaded, and/or unjustly influenced 15- 20 tenants of the Properties to abandon their leases and to vacate the properties, which deprived Plaintiffs of rents which they were entitled to by law.

100. Defendants actions caused Plaintiffs to suffer monetary damages in excess of approximately $200,000.

## COUNT VI – FRAUDULENT INDUCEMENT

101. Plaintiffs reassert and incorporate by reference each allegation above and below as if fully set forth here.

102. In addition to the previous counts, Plaintiffs bring this count for fraudulent inducement against Defendants.

103. On January 12, 2022, Defendants, via their real estate broker, provided via email warranties and representations to Plaintiffs that "all roofs are less than 4 years old."

104. Two of the properties, 2315 Eastmoreland and 2404 Eastmoreland had roofs substantially older than 4 years, were damaged to the point of causing interior damage to the

property, and posed a health and safety risk to tenants.

105. Defendants made these fraudulent misrepresentations to Plaintiffs, knowing that the statements were false, and with the intent that the statements would induce Plaintiffs to increase their purchase price for the properties.

106. Plaintiffs did rely on the statements in Defendants' real estate broker's January 12 email in deciding to purchase the Properties and for what amount.

107. As a result of Defendants fraudulent warranties and misrepresentations, Plaintiffs decided to purchase the Property for the amount stated in the Contract.

108. As a result of Defendants' fraudulent warranties and misrepresentations, Plaintiffs suffered injuries and damages in excess of $35,000.

**COUNT VII – § 2701 and § 2707. UNLAWFUL ACCESS TO STORED COMMUNICATIONS**

109. Plaintiffs reassert and incorporate by reference each allegation above and below as if fully set forth here.

110. In addition to the previous counts, Plaintiffs bring this count for Defendants' violation of § 2701 - unlawful access of Plaintiffs' stored communications.

111. Between April 13, 2023 and present, Defendants intentionally accessed a facility through which an electronic communication service is provided without authorization and thereby obtained, altered, and prevented authorized access to electronic communications.

112. Specifically, Defendants improperly and unlawfully hacked into the Buckingham Google Account and accessed all of Plaintiffs' proprietary emails, including but not limited to, financial statements, resident lists, resident personal and financial information, and collections information.

113. Defendants even sent an email to Rajiv Kamaria's personal account from the

Buckingham Google Account and then deleted the email from the Buckingham Google Account in attempt to cover-up their wrongdoing.

114. Defendants' misconduct has caused Plaintiffs to be damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs, Avrahom Orloff, Moshe Silber, Buckingham and Crestview TIC I LLC, Buckingham and Crestview TIC II LLC, and Buckingham and Crestview TIC III LLC, demand judgment against Defendants, Usha Kamaria, Rajiv Kamaria, Buckingham Square LLC, and Crestview Manor Apartments LLC, for damages in excess of $335,000 not including fees and costs, attorney's fees, statutory damages, and punitive damages, as well as any such other relief this Court deems just and proper.

Dated: December 8, 2023

Respectfully submitted,

*/s/ Avi Kamionski*
Shneur Nathan
Avi Kamionski
Warren Fasone
NATHAN & KAMIONSKI LLP
33 W. Monroe St., Suite 1830
Chicago, IL 60603
(312) 612-1955
*Attorneys for Plaintiffs*