IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Avraham Orloff, *et al.*,

Plaintiffs,

v.

Usha Kamaria, *et al.*,

Defendants.

Case No.: 23-cv-50097

Judge Iain D. Johnston

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Avraham Orloff and Moshe Silber ("the Buyers") are California real estate investors, branching out into the underrated market of Rockford, Illinois.[1] In 2022, the Buyers purchased Buckingham Square and Crestview Manor apartment complexes from Sellers Rajiv Kamaria, his business partner, and their shared LLCs. When the deal went south months after closing, the Buyers sued for fraud, breach of contract, intentional interference with contract, and violations of the Stored Communications Act ("SCA"), essentially claiming that the Sellers purposely misrepresented building finances to help sell both apartment complexes. The Sellers moved for summary judgment on all counts, and the Buyers, only on the fraud and SCA claims.

---

[1] The Court has jurisdiction over this case under 28 U.S.C. § 1332 because the Parties are completely diverse and the Buyers alleged in good faith that the amount in controversy exceeds $75,000. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (plaintiff's good-faith *estimate* satisfies § 1332's amount-in-controversy requirement).

For the following reasons, the Court partially grants and partially denies both motions. The Sellers are entitled to summary judgment on intentional interference with contract and the LLC Buyers on the SCA claims. Orloff and Silber's individual claims are dismissed, leaving only the LLC Buyers to proceed on fraud and breach of contract theories. And, finally, the Court denies summary judgment on all other claims and counterclaims.

## I.    Background

While negotiating the sale of two apartment complexes in Rockford, Illinois, the Buyers hired a professional inspector, contacted the Sellers' agent about property conditions, and reviewed detailed financial statements—such as leases, tax bills, operating statements, rental agreements, rent rolls, and an Offering Memorandum. Dkt. 51-1, 3, ¶ 9; Dkt. 103, ¶ 28. Based on these documents and the selling agent's description of property conditions, the Parties entered an as-is sales contract for "all [ ] property used in connection with the rental and leasing" of Buckingham Square and Crestview Manor Apartments. Dkt. 56 ¶ 50; Dkt. 106 ¶ 33. The Buyers assigned all interest in the sales contract to their LLCs, and the Parties jointly agreed to remove several troublesome tenants. Dkt. 106 ¶¶ 10, 21, 26; Dkt. 103, ¶ 17; Dkt. 97-3, 30:6–31:22.

Months later, however, the Buyers came to believe that Seller Rajiv Kamaria purposely misrepresented the building finances to close the sale. And though the Sellers dispute Kamaria's intent, they admit at least two misrepresentations before closing: The selling agent exaggerated the property conditions and upgrades, and the

2

Sellers' Offering Memorandum underestimated annual taxes. Dkt. 98 at 9; Dkt. 105 at 4; Dkt. 106, ¶¶ 10–18, 25, 37. Kamaria also admits to using Buckingham Square's official email account to forward and delete emails without permission after closing. Dkt. 106¶ 44–49. The Buyers brought suit on these facts and inferences, and the action quickly became complicated—complete with seven claims, two-counterclaims,[2] partial cross-motions for summary judgment, and *thirty-seven* affirmative defenses split between nine Parties.

## II. Analysis

Given this complex procedural posture, the Court briefly narrows the field of play. Sixteen of the Sellers' affirmative defenses are forfeited or waived. Of the eleven even named in the motion, five have no factual basis or legal support. *See* Dkt. 98, 4–6 (stating, without any support, that the claims are barred "by the terms of the parties' agreements," deficiencies in the pleading, or by waiver, laches, or estoppel). As the Court sometimes notes, it doesn't get paid to give legal advice anymore. In the spirit of zealous advocacy, parties have every right to pour time and money into pro-forma affirmative defenses consistent with Rule 11. But, on both sides, counsel's time would be better spent narrowing legal issues likely to resolve the action and developing those theories. Just because a claim or defense *could* be pleaded doesn't mean it *should* be pleaded. *Hernandez v. Williams*, No. 3:23-cv-50267, 2025 U.S. Dist. LEXIS 44789, at *5 n.1 (N.D. Ill. Mar. 12, 2025) (*citing Blazek v. U.S. Cellular Corp.*,

---

[2] The Sellers claim that they're entitled to attorneys' fees if they prevail on the breach of contract claim and that, regardless, the Buyers agreed to pay for personal property left at the complexes. Dkt. 56, 25.

3

937 F. Supp. 2d 1003, 1013 (N.D. Iowa 2011).  What's more, life is short.  And, as the Seventh Circuit has repeatedly held, district courts need not consider perfunctory, unsupported, and undeveloped arguments.  *See e.g., United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991); *Gutierrez v. Kermon*, 722 F.3d 1003, 1012 n. 3 (7th Cir. 2013).  In fact, if kitchen-sink pleading serves any purpose, it's triggering mini tirades like this one.  *E.g. Moore v. Lauer*, No. 3:22-cv-50354, 2024 U.S. Dist. LEXIS 11673, at *2 (N.D. Ill. Jan. 23, 2024); *Lesorgen v. Mondelez Glob., LLC*, 674 F. Supp. 459, 464 (N.D. Ill. 2023).

Of the six affirmative defenses relevant to this motion, only two demand immediate attention.  First, none of the claims are time-barred.  Although the contract states that all representations and warranties dissolve 180 days after closing, the Buyers timely initiated arbitration as required by the contract.  Dkt. 108, ¶ 40; *see Jones v. Ford Motor Co.*, 347 Ill. App. 3d 176, 179–80 (2004) (starting mandatory arbitration may toll a contractual limitations period in Illinois).  Second, Orloff and Silber lack standing to sue on the contract because they assigned all their interest to their LLCs before closing.  *See Am. Nat. Tr. Co. of Chicago v. Kentucky Fried Chicken of S. California, Inc.*, 308 Ill. App. 3d 106, 118 (1999).  So, the following analysis only concerns the LLC Buyers, and the Court addresses the remaining affirmative defenses alongside the relevant claims.

### a.  Sellers' counterclaim for damages

In response to the Buyers' partial motion for summary judgment (only on their fraud and SCA claims), the Sellers seek summary judgment on all counts, including

4

their counterclaims for attorneys' fees and damages. In considering cross-motions for summary judgment, the Court must construe all inferences in favor of the party against whom the motion under consideration is made. *Allen v. City of Chi.*, 351 F.3d 306, 311 (7th Cir. 2003). When cross motions are filed, each movant independently bears a respective burden to show no dispute of material fact exists, entitling it to judgment as a matter of law. *Kreg Therapeutics, Inc. v. VitalGo Inc.*, 919 F.3d 405, 416-17 (7th Cir. 2019). "In other words, the Court considers the defendant's motion viewing the facts and reasonable inferences in the light most favorable to the plaintiff. Then, the Court puts on the blinders and considers the plaintiff's motion viewing the facts and reasonable inferences in the light most favorable to the defendant." *Wooten v. Taking Care of Our Seniors, Inc.*, No. 1:17-cv-5570, 2022 U.S. Dist. LEXIS 93758, at *3 (N.D. Ill. May 25, 2022).

Summary judgment is appropriate when there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). So, the Court can't grant summary judgment where the parties dispute the terms or existence of an agreement. *Gen. Cas. Co. of Wisconsin v. Techloss Consulting & Restoration*, 461 F. Supp. 3d 804, 809 (N.D. Ill. 2020) (collecting cases). And on the Sellers' counterclaim for damages, the Buyers maintain that they never agreed to refund the Sellers for personal property

5

left in the building. Dkt. 56, ¶ 5–6. That's a material dispute, inappropriate for resolution at this stage.

> b. Fraud and Intentional Interference with Contract

Turning to the intentional torts in the action, the Sellers admit to removing tenants before closing and concede that the properties are overall in worse condition than the selling agent represented. As a matter of law, however, the Parties contest each element of each count under several different theories. After reviewing each argument and argument in the alternative—sometimes, even, the alternative *to* the alternative—the Court groups these torts by their common intent requirement and decides the issues narrowly.

"Due to the difficulty of proving a subjective state of mind, cases involving motivation and intent are usually not appropriate for summary judgment." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 991 F.2d 1249, 1258 (7th Cir. 1993). All fraud claims in the Complaint require evidence of intent to defraud, meaning the defendant knowingly misrepresented material facts with the hope of misleading the listener. *See Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003) (applying Illinois law); *Bauer v. Giannis*, 359 Ill. App. 3d 897, 902 (2005). Likewise, for intentional interference under Illinois law, "intent" requires an affirmative "desire to harm" a business or contractual relationship "not reasonably related to the defense of a recognized property or social interest." *Heights National Bank v. Arlington Heights Federal Savings & Loan Association*, 37 Ill. 2d 546, 551 (1967); *Ray Dancer, Inc. v. DMC*

6

*Corp.*, 230 Ill. App. 3d 40, 49 (1992). The alleged tortious interference must be "wrongful," "intentional," and "unjustified." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154 (1989).

But the record evidence doesn't adequately establish the Sellers' intent to defraud for summary judgment purposes. Kamaria testified at his deposition that the selling agent miscommunicated several statements and that the difference between anticipated and actual taxes was only an accounting error. *E.g.*, Dkt. 104-1, 77:10–24. The Sellers treat this testimony as evidence of a mistake; the Buyers, as evidence of malice. *Compare* Dkt. 99 at 6–8 (the Buyers suggest the Sellers' miscalculations are too coincidental to be a coincidence) *with* Dkt. 105 at 4–5 (the Sellers call for the opposite conclusion). Because a reasonable factfinder could draw either inference, summary judgment isn't appropriate on the Buyers' fraud claims. *Cent. Nat. Life Ins. Co. v. Fid. & Deposit Co. of Maryland*, 626 F.2d 537, 548 (7th Cir. 1980); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (summary judgment isn't appropriate when parties draw competing *inferences* from stipulated facts).

Contrastingly, summary judgment is appropriate where the evidence of intent is undisputed—either by express agreement or the failure to present contrary evidence. *See Indep. Tr. Corp. v. Hurwick*, 351 Ill. App. 3d 941, 955 (2004), *Meister v. Georgia-Pac. Corp.*, 43 F.3d 1154, 1159 (7th Cir. 1995); *Cent. Nat. Life Ins. Co. v. Fid. & Deposit Co. of Maryland*, 626 F.2d 537, 548 (7th Cir. 1980); *Alexander v. Erie Ins. Exch.*, 982 F.2d 1153, 1160 (7th Cir. 1993). The Buyers' intentional interference claim falls into the latter camp. On the record before the Court, no reasonable jury

could find that the Sellers purposely and wrongfully interfered with the Buyers' leases. Rather, several tenants became "such a daily hassle" that the Buyers agreed to remove them before closing. Dkt. 97-3, 30:13–16; see id. 30:6–18; 31:7-21. What's more, the Buyers continued removing the tenants even after assuming the lease, further suggesting that removal was in the business's best interests. *See Swager v. Couri*, 77 Ill.2d 173, 190–91, 32 Ill. Dec. 540 (1979) (corporate officers can't be held liable for tortious interference with contracts when they use their best business judgment and discretion to protect business interests). Based on the undisputed evidence, the Court grants summary judgment to the Sellers on the intentional interference claim.

### c. Unlawful Access to Stored Communications (SCA)

The Court also grants summary judgment on the SCA claim, this time, to the Buyers. The SCA provides a private cause of action for intentional, unauthorized access to electronically stored communications. 18 U.S.C. § 2701(a); 18 U.S.C. § 2707. Kamaria admits the same, acknowledging that he intentionally accessed the building email account after closing, but noting that the Buyers suffered no actual damages from the breach. Though the email address isn't explicitly named in the contract, the Buyers have a proprietary interest in *all* property used for rental and leasing. So, the cross-motions for summary judgment on the SCA claim turn strictly on damages.

Whether the SCA requires proof of actual damages is an open question in the Seventh Circuit, but not a difficult one. Trial courts in this Circuit view actual

damages as an alternative to statutory damages; whereas, the Sellers counter that the Eleventh Circuit requires proof of actual damages to maintain a claim. *Compare Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 965 (11th Cir. 2016) (requiring actual damages) *with Shefts v. Petrakis*, 931 F.Supp.2d 916, 918 (C.D. Ill.) *and Joseph v. Carnes*, 108 F. Supp. 3d 613, 618 (N.D. Ill. 2015) *and United Lab., Inc. v. Rukin*, 1999 U.S. Dist. LEXIS 12287 (N.D. Ill. 1999) *and Cedar Hill Assocs. v. Paget*, 2005 U.S. Dist. LEXIS 32533, *9, (N.D. Ill. 2005) *and Maremont v. Susan Fredman Design Grp.*, Ltd., No. 10-cv-7811, 2014 U.S. Dist. LEXIS 26557, at *7 (N.D. Ill. 2014) (all treating actual damages as an alternative to statutory damages). The Court isn't bound by either the Eleventh Circuit or its colleagues' decisions in the Northern District of Illinois. *In re Deere & Co. Repair Serv. Antitrust Litig.*, 703 F. Supp. 3d 862, 887 (N.D. Ill. 2023). And, despite the Parties' tendency to over-litigate issues in this case, no Party explains why their cited authorities are more persuasive than their opponents'. Until a party gives the Court a better metric, the Court's approach is to side with the cases that adhere to the statutory language. Under § 2707(c)'s plain language, a district court *must* award each victim at least $1,000 and *may* award more, considering punitive damages, actual damages, and any profits made from the violation. 18 U.S.C. § 2707(c). So, even without actual damages, the Buyers are entitled to summary judgment and at least $1,000 in statutory damages.

d. Breach of Contract

Finally, on the Sellers' motion, the Court denies summary judgment on the breach of contract claim because the Buyers properly sued on the sales contract.[3] Specifically, the Buyers claim violations of Section 9, subparts (i)–(iii), requiring current and complete operating statements, rent rolls, rental agreements, leases, and tax bills. A reasonable jury could find the Sellers breached these provisions by producing inaccurate information. Although the contract states that the property was sold "as is," it clarifies that there are no additional representations or warranties *beyond those stated in the contract*. So, Section 9 still binds the Parties.

The Sellers argue that the contract merged into the deed: a common law doctrine stating that contract provisions for real-estate transactions merge into a formally executed deed. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008). But merger by deed assumes that delivering the deed automatically fulfills the contractual provisions; it doesn't apply to unfinished business between the parties after closing. *Siemer v. Reetz*, 2024 IL App (2d) 230293-U, ¶ 87, *appeal denied,* 260 N.E.3d 93 (Ill. 2025); *Trapp v. Gordon*, 366 Ill. 102, 111 (1937). In the interests of justice, a seller who promises to sweeten the deal to facilitate closing can't turn around and deny their promise once money changes hands. *Shelby v. Chicago & Eastern Illinois Railroad Co.*, 143 Ill. 385, 32 N.E. 438. So, the Court rejects the Sellers' argument

---

[3] Like a friend that doesn't order fries because they'll "just have some of yours," the Buyers claim they're entitled to summary judgment in response to the *Seller's* motion. They never make that motion for themselves, so the Court won't decide whether the Buyers are entitled to summary judgment on this count.

that contract merged into the deed and denies their motion for summary judgment. Without prevailing on the breach of contract claim, moreover, the Sellers aren't entitled to attorneys' fees. So, the Court denies the Sellers' motion for summary judgment on both counterclaims.

## III.    Conclusion

To summarize, the Court grants summary judgment to the Buyers on the SCA violations and to the Corporate Sellers on Intentional Interference with Contract. Because the Individual Buyers lack standing to sue on the contract, only the LLC Buyers remain.   All other motions are denied.

Entered: July 24, 2025                                          By:

Iain D. Johnston
U.S. District Judge